UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHRISTY DEAKLE                                        CIVIL ACTION

VERSUS                                                        NO. 20-1554

WESTBANK FISHING, LLC, ET AL.              SECTION "R" (5)


## ORDER AND REASONS

Before the Court is plaintiff Christy Deakle's motion for judicial notice of the temperature and heat index at Galliano, Louisiana, on June 3, 2019, and for judicial notice of certain facts about heat index.[1]  Defendants Westbank Fishing, LLC, the F/V MARIA C, and Certain Underwriters at Lloyd's Syndicates XLC, LIB, and AMA, oppose the motion.[2]  Also before the Court is defendants' motion *in limine* to exclude Coast Guard materials at trial.[3]  Plaintiff opposes defendants' motion.[4]

For the following reasons, the Court grants in part, and denies in part, plaintiff's motion for judicial notice.  The Court further grants defendants' motion to exclude the Coast Guard materials.

---

[1]     R. Doc. 48.
[2]     R. Doc. 70.
[3]     R. Doc. 58.
[4]     R. Doc. 73.

## I.   BACKGROUND

This case arises out of a death aboard the F/V MARIA C on June 3, 2019.  Decedent Bryan Urby was working as a fisherman aboard the vessel when he began to show signs of heat distress.[5]  The United States Coast Guard airlifted Mr. Urby to University Medical Center in New Orleans, where he was pronounced dead.[6]  Christy Deakle is the personal representative of Mr. Urby and his two children.[7]  On May 28, 2020, Deakle filed suit in this Court, alleging that defendants' negligence contributed to Mr. Urby's death.[8]

On June 11, 2021, plaintiff filed a motion for judicial notice.[9] Specifically, plaintiff asks the Court to take judicial notice that, on June 3, 2019 in Galliano, Louisiana, the high temperature was 92 degrees Fahrenheit,[10] and the high heat index was 98 degrees Fahrenheit.[11]  Plaintiff also seeks judicial notice of "the fact that 'heat index values [are] devised for shady, light wind conditions'" and that "exposure to full sunshine can

---

[5]     R. Doc. 57-4 at 2-5.
[6]     *See* R. Doc. 57-5 at 3-4; R. Doc. 57-6 at 2; R. Doc. 83-11 at 4.
[7]     *See* R. Docs. 81-6, 81-7 & 81-8.
[8]     R. Doc. 1.
[9]     R. Doc. 48.
[10]    R. Doc. 48-1 at 3-4.
[11]    *Id.* at 4-5.

increase heat index values by up to 15 degrees Fahrenheit."[12]   Finally, plaintiff asks the Court to take judicial notice of a heat-index chart published by the National Weather Service.[13]

Defendants oppose the motion for judicial notice.[14] They contend that plaintiff's asserted facts are irrelevant and will mislead the jury because the MARIA C was up to 40 miles away from Galliano,[15] because defendants have their own temperature measurement from aboard the MARIA C,[16] and because plaintiff has provided no evidence that the weather conditions on the MARIA C were similar to those at Galliano.[17]

Separately, on June 22, 2021, defendants filed a motion *in limine* to exclude the use of United States Coast Guard materials at trial.[18]  Defendants contend that 46 U.S.C. § 6308(a) precludes the use of any part of a Coast Guard report in a civil action.[19]  They argue that no party should be able to

---

[12]   *Id.* at 5 (quoting Nat'l Weather Serv., *Heat Forecast Tools*, https://weather.gov/safety/heat-index).

[13]   *Id.*; *see also* R. Doc. 48-7.

[14]   R. Doc. 70 at 1.

[15]   *Id.* at 5.  Defendants dispute plaintiff's ability to calculate the distance from Galliano to the MARIA C, but argue that, even if their distance calculation of 30 to 40 miles is correct, the measurements at Galliano are irrelevant.  *See id.* at 4.

[16]   *Id.* at 5.

[17]   *Id.* at 6.

[18]   R. Doc. 58.

[19]   R. Doc. 58-1 at 2-3.

3

rely on or refer to the Coast Guard report, which includes findings about temperature and weather conditions aboard the MARIA C on June 3, 2019.[20] Plaintiff opposes the motion, arguing that defendants' cited cases are distinguishable, and that the Coast Guard's temperature findings are supported by reliable data.[21]

The Court considers the motion for judicial notice and the motion to exclude the Coast Guard materials below.

## II.   MOTION FOR JUDICIAL NOTICE

### A.   Legal Standard

The Court may take judicial notice of an adjudicative fact that is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  It is generally within the Court's discretion to take judicial notice of a fact, Fed. R. Evid. 201(c)(1), but the Court "*must* take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2) (emphasis added).  In a civil

---

[20]   *Id.* at 4.
[21]   R. Doc. 73 at 4-7.

case, the Court "must instruct the jury to accept the noticed fact as conclusive." Fed. R. Evid. 201(f).

Courts should not take judicial notice of irrelevant facts. *See, e.g.*, *United States v. Emmons*, 524 F. App'x 995, 997 (6th Cir. 2013); *United States v. Lumiguid*, 499 F. App'x 689, 691 (9th Cir. 2012); *see also Gisclair v. Galliano Marine Serv.*, No. 05-5223, 2007 WL 1266396, at *1 (E.D. La. Apr. 30, 2007). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Hicks-Fields v. Harris Cty.*, 860 F.3d 803, 809 (5th Cir. 2017) (quoting *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 425 (5th Cir. 2006)).

Further, courts have held that, on a motion for judicial notice, relevant facts are subject to the exclusionary rules of evidence, including Rule 403. *See Knop v. Johnson*, 667 F. Supp. 467, 485 (W.D. Mich. 1987) ("[J]udicial notice is an alternative means of proof that is subject, like all other offers of evidence, to rule[] 403 . . . ."); 21B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 5104 (2d ed. 2021) (noting some courts' "sensible reading" that Rule 403 applies to judicial notice"); *see also Colonial Leasing Co. v. Logistics Control Grp. Int'l*, 762 F.2d 454, 461 (5th Cir. 1985) ("[I]t is clear that the court's power to take judicial notice 'at any stage' may

be circumscribed by other considerations." (quoting Fed. R. Evid. 201(d)). The Court should therefore decline to take judicial notice of relevant evidence, "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

### B.    Discussion

Plaintiff here seeks judicial notice of four asserted facts: (1) that the high temperature on June 3, 2019 at Galliano, Louisiana, was 92 degrees Fahrenheit;[22] (2) that the high heat index on June 3, 2019 at Galliano, Louisiana, was 98 degrees Fahrenheit;[23] (3) "the fact that 'heat index values [are] devised for shady, light wind conditions'" and that "exposure to full sunshine can increase heat index values by up to 15 degrees Fahrenheit;"[24] and (4) the representations in a National Weather Service chart, pertaining to heat-index values.[25]

---

[22]    R. Doc. 48-1 at 3-4 (citing R. Docs. 48-4 & 48-5).

[23]    *Id.* at 4-5.

[24]    *Id.* at 5 (quoting Nat'l Weather Serv., *Heat Forecast Tools*, https://weather.gov/safety/heat-index).

[25]    *Id.* (citing R. Doc. 48-7).

As an initial matter, all of the facts of which plaintiff seeks judicial notice facially satisfy the requirements of Rule 201. Specifically, the asserted facts are not subject to reasonable dispute because they can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). All of plaintiff's information comes from U.S. government agencies, and the Court has no reason to question the accuracy of the source material. Indeed, defendants, in their opposition, do not contest the accuracy or reliability of plaintiff's sources, nor do they otherwise contend that the asserted facts are subject to reasonable dispute.

Instead, defendants argue that the Court should not take judicial notice of plaintiff's facts because the facts are not relevant and risk misleading the jury.[26] If the facts are irrelevant, or if they substantially risk confusing or misleading the jury, the Court will not take judicial notice of them. *See, e.g.*, *Emmons*, 524 F. App'x at 997; *cf. Knop*, 667 F. Supp. at 485. With these exclusionary criteria in mind, the Court considers plaintiff's four proffered facts.

First, plaintiff seeks judicial notice of the fact that the high temperature on June 3, 2019 at Galliano, Louisiana, was 92 degrees Fahrenheit.[27] The

---

[26]   R. Doc. 70 at 1.

[27]   R. Doc. 48-1 at 3-4 (citing R. Docs. 48-4 & 48-5).

Court finds that this fact is relevant, because it tends to show the degree of heat near the Gulf of Mexico on the day of Bryan Urby's death, which was allegedly caused by extreme heat.

Defendants protest that Galliano was 30 to 40 miles away from the MARIA C at the time of Urby's death, and that defendants have already produced a contemporaneous temperature measurement from aboard the vessel.[28]  Defendants contend that, therefore, the Galliano measurement is irrelevant, and, further, that the disparity with their measurement will lead the jury to believe that their "witnesses and records are inaccurate."[29]  But defendants' concerns simply reflect the nature of conflicting evidence. Defendants are free to point out any limitations of plaintiff's evidence, and to present any contrary evidence, to the jury.  *Cf. Ohio Bell Tel. Co. v. Pub. Utils. Comm'n*, 301 U.S. 292, 301-02 (1937) ("[N]otice, even when taken, has no other effect than to relieve one of the parties . . . of the burden of resorting to the usual forms of evidence. . . . It does not mean that the opponent is prevented from disputing the matter by evidence if he believes it disputable." (citation omitted)).  The jury is capable of determining which evidence is the better indication of the conditions on the MARIA C at the time of Urby's

---

[28]  R. Doc. 70 at 4-6.
[29]  *Id.* at 5.

death: defendants' reading from the vessel, or plaintiff's reading at Galliano. The Court therefore takes judicial notice that the high temperature on June 3, 2019 at Galliano, Louisiana, was 92 degrees Fahrenheit.

Second, plaintiff seeks judicial notice of the fact that the high heat index on June 3, 2019 at Galliano, Louisiana, was 98 degrees Fahrenheit.[30] The above analysis as to temperature measurement applies with equal force to the proffered heat-index measurement. Defendants' concerns about relevance and the risk of misleading the jury are, as with temperature, merely issues of weight. Accordingly, the Court takes judicial notice that the high heat index on June 3, 2019 at Galliano, Louisiana, was 98 degrees Fahrenheit.

Third, plaintiff seeks judicial notice of "the fact that heat index values [are] devised for shady, light wind conditions" and that "exposure to full sunshine can increase heat index values by up to 15 degrees Fahrenheit."[31] The Court finds that this statement is irrelevant. Plaintiff has pointed to no evidence that the MARIA C was exposed to full sunshine on June 3, 2019. Without such evidence, this statement has no discernible probative value.

---

[30] R. Doc. 48-1 at 4 (citing R. Doc. 48-5 and Nat'l Weather Serv., *Meteorological Conversions and Calculations, Heat Index Calculator*, https://www.wpc.ncep.noaa.gov/html/heatindex.shtml).

[31] *Id.* at 5 (internal quotations omitted).

The Court therefore denies plaintiff's request for judicial notice of these facts about heat index.

Finally, plaintiff seeks judicial notice of a heat-index chart published by the National Weather Service.[32]  Plaintiff does not explain how it intends to use the chart, but the Court finds that the chart conveys at least two distinct facts, which require separate treatment.  First, the chart shows the heat index produced by particular combinations of temperature and relative humidity.[33]  To the extent that plaintiff seeks judicial notice of the chart for its heat-index values, the Court finds that it is irrelevant.  Plaintiff has generated its heat-index value at Galliano without relying on the chart, and has not produced any other measurements of temperature or humidity that might be plugged into the chart to produce a heat index.  The calculating function of the chart is therefore not grounds for judicial notice.

The chart also indicates, for a given heat index, the "Likelihood of Heat Disorders with Prolonged Exposure or Strenuous Activity."[34] Each displayed heat-index value is categorized as "Caution," "Extreme Caution," "Danger,"

---

[32]   *Id.* (citing R. Doc. 48-7).

[33]   R. Doc. 48-7.  For instance, a temperature of 86 degrees Fahrenheit and relative humidity of 60 percent results in a heat index of 91 degrees Fahrenheit.  *Id.*

[34]   *Id.*

or "Extreme Danger."[35]  Plaintiff does not explain whether or how it seeks to use this categorization scheme, but the only theory under which the categories are relevant is that they show that a 98-degree heat index—observed at Galliano on June 3, 2019—falls in the "Extreme Caution" category.

But in this sense, the probative value is substantially outweighed by the risk of confusing the issues or misleading the jury, under Rule 403.  *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by the danger of . . . confusing the issues, [or] misleading the jury . . . .").  As to probative value, the relevance of the categories is limited to the heat-related dangers *at Galliano*, which, by plaintiff's estimate, was 30 to 40 miles away from the location of Urby's death.[36]  While the Court finds that the temperature and heat index at Galliano are relevant despite the distance from the vessel, to layer a qualitative risk assessment *on top* of the heat index pushes probativeness to its limits.  Thus, even assuming *arguendo* that the probative value of the categorization scheme meets the relevance threshold, the degree of probativeness is low.

---

[35]    *Id.*
[36]    R. Doc. 48-1 at 2.

Moreover, the Court would risk confusing or misleading jurors if it instructed the jury to "accept . . . as conclusive," Fed. R. Evid. 201(f), the fact that a heat index observed near the Gulf on the date of decedent's death falls into the "Extreme Caution" category. Jurors may be inclined to ask whether defendants exercised "caution," "extreme caution," or the like, as to Urby's work in the heat. This risks a conflation of the National Weather Service's risk categories with legal standards of care. In a case where defendants' alleged negligence is the core issue, the risk that the chart's categorization scheme will tend to confuse or mislead the jury is at least moderate. Up against the barely-there probative value, this risk of confusion substantially prevails. The Court finds that Rule 403 precludes judicial notice of the chart's four categories regarding the "Likelihood of Heat Disorders with Prolonged Exposure or Strenuous Activity."[37]

The Court discerns no other facts presented in the heat-index chart. Therefore, the Court denies plaintiff's request for judicial notice of the chart.

For the foregoing reasons, the Court grants in part, and denies in part, plaintiff's motion for judicial notice. Specifically, the Court takes judicial notice that, on June 3, 2019, in Galliano, Louisiana, the high temperature was 92 degrees Fahrenheit, and the high heat index was 98 degrees

---

[37]     R. Doc. 48-7.

Fahrenheit.  The Court does not take judicial notice of plaintiff's proffered facts about heat index, nor the heat-index chart.

## III.   MOTION TO EXCLUDE COAST GUARD MATERIALS

Defendants move to exclude the use of Coast Guard materials under 46 U.S.C. § 6308.  The Coast Guard Authorization Act of 1996 limits the availability of Coast Guard members and Coast Guard materials for use in civil actions.  The statute provides:

> Notwithstanding any other provision of law, no part of a report of a marine casualty investigation . . . , including findings of fact, opinions, recommendations, deliberations, or conclusions, shall be admissible as evidence or subject to discovery in any civil or administrative proceedings, other than an administrative proceeding initiated by the United States.

46 U.S.C. § 6308.  Courts have interpreted this provision broadly.  *See, e.g.*, *In re M/V UNCLE* ROBERT, No. 18-10526, 2020 WL 2615910, at *1 (E.D. La. May 22, 2020) ("The [Coast Guard] report may not be introduced into evidence by any party or witness and no portion of the report may be considered." (citations omitted)); *Thompson v. Yellow Fin Marine Servs.*, LLC, No. 15-311, 2016 WL 3997060, at *2 (E.D. La. July 26, 2016) (denying the use of a Coast Guard report for any use, including impeachment, at trial); *Am. S.S. Co. v. Hallett Dock Co.*, No. 09-2628, 2013 WL 308907, at *6 (D. Minn. Jan. 25, 2013) ("The Coast Guard Report . . . may not be used to

refresh a witness's recollection or for impeachment."); *Baker Hughes Oilfield Operations, Inc. v. Seabulk Tankers, Inc.*, No. 03-1230, 2004 WL 859199, at *1 (E.D. La. Apr. 20, 2004) ("This Court intends to enforce 46 U.S.C. § 6308(a) by striking any portion of the Coast Guard report, however it may be presented.").

Furthermore, courts have held that "any portion of [an] expert opinion that relies on or is substantially based on the Coast Guard Report is inadmissible." *Am. S.S. Co.*, 2013 WL 308907, at *6 (citation omitted). While Federal Rule of Evidence 703 generally permits experts to rely on otherwise inadmissible evidence, "[t]he broad exclusion provided by § 6308 [trumps] Federal Rule of Evidence 703 . . . due to the 'notwithstanding any other provision of law' clause." *United States v. Egan Marine Corp.*, 808 F. Supp. 2d 1065, 1074 (N.D. Ill. 2011) (citation omitted).

Here, § 6308 plainly covers the Coast Guard investigative file that plaintiff seeks to introduce as an exhibit.[38]  Indeed, plaintiff concedes in its opposition that the contested materials are the product of a marine casualty investigation.[39]  The Court therefore heeds the statute's clear command to

---

[38]    R. Doc. 46 (listing as an exhibit "P-15 Coast Guard Response to FOIA Request").

[39]    R. Doc. 73 at 2 ("The United States Coast Guard . . . investigated this fatality and generated a report.").

prohibit the admission of the Coast Guard file, including its findings of fact, opinions, recommendations, deliberations, and conclusions.  The Coast Guard report listed as plaintiff's Exhibit P-15[40] may not be used at trial for any purpose, including impeachment.  Furthermore, the parties and their experts may not refer to, rely on, or substantially base their testimony on the findings contained in the Coast Guard report.  To the extent that impermissible references are made, they shall be stricken.

The Court notes that this ruling necessarily requires the exclusion of the Coast Guard's findings as to temperature and other weather conditions, which clearly constitute "findings of fact" under the statute.  Plaintiff's arguments as to why the Court should admit these findings are unavailing.  Specifically, plaintiff points to two cases in which courts referred to temperature findings in Coast Guard reports.  *See Pavlides v. Galveston Yacht Basin, Inc.*, 727 F.2d 330 (5th Cir. 1984); *Ramsey v. Lucky Stores, Inc.*, 853 S.W.2d 623 (Tex. App. 1993).  Neither of plaintiff's cited cases is instructive here, as both cases predate the 1996 statute that governs the present dispute.  Accordingly, any evidentiary considerations by the courts in plaintiff's cases took place in the absence of the mandate of § 6308.

---

[40]    R. Doc. 46.

The Court therefore grants defendants' motion to exclude the Coast Guard materials.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS in part, and DENIES in part, plaintiff's motion for judicial notice.   The Court further GRANTS defendants' motion to exclude the Coast Guard materials.

New Orleans, Louisiana, this __10th__ day of September, 2021.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

16